**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**TAMEKA G.**

                              **Plaintiff,**                              **22-CV-06056-HKS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

_____

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g). Dkt. #15.

## BACKGROUND

On November 21, 2018, plaintiff, at the age of 46, protectively filed an application for disability insurance benefits, alleging an onset date of September 28, 2017. Dkt. #7-3, p. 2; #7-5, pp. 2-3 .[1] Plaintiff alleged she was disabled due to severe pain in her back and neck. Dkt. #7-6, p. 4. Plaintiff's claim was denied initially, Dkt. #7-4, pp. 3-8, and on reconsideration. Dkt. #7-4, pp. 10-21.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

Plaintiff requested a hearing, and a telephonic hearing was held on April 27, 2021 before Administrative Law Judge ("ALJ") David Neumann. Dkt. #7-2, pp. 30-81. Plaintiff appeared with a non-attorney representative at the hearing.

Plaintiff testified that, while working at General Motors in September 2017, she was lifting fuel rails onto a rack that was approximately six feet high when she felt a burning sensation in her upper back. Dkt. #7-2 pp. 38-41. Since then, she has experienced upper back pain; shooting pain, numbness, and tingling in her right arm; and headaches. Dkt. #7-2, pp. 41-42.

Plaintiff rated her pain, unmedicated, as 8 on a scale of 1 to 10, and she testified that with medication it is around 6. Dkt. #7-2, p. 43. Some days, her pain is a 10. *Id.*

Plaintiff testified that she has been prescribed a lot of different medications; she has received two injections in her back; and she has undergone physical therapy. *Id.* However, these treatments had no effect on her symptoms. Dkt. #7-2, p. 44.

Plaintiff further testified that it hurts to reach overhead and to turn her head left or right and up or down. *Id.* She lives alone, but her mother comes over every day. *Id.* If she needs something above her shoulder level, she has someone else get it for her. *Id.* However, she can sign her name, operate a cash register, and use her hands to fasten

buttons. Dkt. #7-2, p. 48. Plaintiff also testified that she completed three years of college. Dkt. #7-2, p. 37

Plaintiff testified that she has not tried to lift anything heavy, but she can lift small grocery items. Dkt. #7-2, pp. 53-54. She can only walk for a couple of feet because of the pain. Dkt. #7-2, p. 54. She can sit for about an hour before she needs to move around. Dkt. #7-2, pp. 54-55.

Plaintiff testified that she could bathe, dress, and take care of her personal needs by herself. Dkt. #7-2, p. 55. She tries to go shopping once a week. *Id.* She goes alone if she is only getting a couple of items, but otherwise her mother goes with her. Dkt. #7-2, pp. 55-56. Her mother also cooks, does the laundry, vacuums, sweeps, mops, does dishes, and takes out the trash. Dkt. #7-2, p. 56-57.

Plaintiff testified that she has a driver's license and can drive for about an hour. Dkt. #7-2, p. 57. She pays people to mow her grass and shovel snow. Dkt. #7-2, p. 58.

Plaintiff also testified that her doctor has recommended surgery, but she declined because she is scared and wants to get a second opinion. Dkt. #7-2, p. 45.

On examination by her representative, plaintiff testified that her physical problems are all on her right side, not her left, and she is left-handed. Dkt. #7-2, p. 59.

She has no problems holding objects such as a coffee cup with her right hand or typing

on a smart phone or computer. *Id.*

Plaintiff testified that her fingers on her right hand sometimes go numb, but

it "comes and goes." Dkt. #7-2, pp. 59-60. Reaching in any direction with her right arm

causes her pain, but she is able to do those things with her left arm. Dkt. #7-2, p. 60.

Plaintiff further testified that she has no "good days," only "bad days" and

"worse days" because she is always in pain. *Id.* Sometimes she stays in bed all day, which

happens at least once a week. Dkt. #7-2, p. 61. On good days, she can get up, make a

bowl of cereal, and drive. *Id.* She drives to all her doctors' appointments. *Id.*

The ALJ then heard testimony from Brian John Daly, a vocational expert

("VE") and certified rehabilitation counselor. Dkt. #7-2, p. 64. The ALJ asked the VE to

assume:

> a hypothetical person of plaintiff's age, education, and past
> work experience who could only lift or carry 10 pounds
> frequently and 20 pounds occasionally with the left upper
> extremity and lift and carry up to five pounds with the right
> upper extremity. The person could stand or walk with normal
> breaks for a total of six hours in an eight-hour workday. They
> could sit with normal breaks for a total of six hours in an eight-
> hour workday. The person would be left-hand dominant, only
> occasional cervical rotation to the right, only occasional
> cervical lateral flexion to the right. They could perform pushing
> and pulling motions with their upper and lower extremities
> within the aforementioned weight restrictions, but only
> occasional reaching, pushing, pulling, lifting, carrying above
> shoulder level with the non-dominant right upper extremity;
> and only occasional pushing and pulling up to five pounds with
> the right upper extremity in all other directions; occasional fine

> manipulation of the right hand; occasional reaching, fingering, and handling with the right upper extremity. The person could perform each of the following postural activities occasionally: climbing ramps and stairs, balancing, stooping, kneeling, crouching, or crawling.

Dkt. #7-2, pp. 73-74.

The ALJ asked the VE if such a person could perform plaintiff's past work, and the VE said she could not. Dkt. #7-2, p. 74. However, the VE testified that such a person could perform the light exertional jobs of furniture rental consultant, dealer accounts investigator, and parking lot cashier. Dkt. #7-2, 74-75.

The VE further testified that the furniture rental consultant and dealer accounts investigator jobs do not require reaching, handling, and fingering more than occasionally, per the Dictionary of Occupational Titles ("DOT"). Dkt. #7-2, p. 75. He also testified that the parking lot cashier job would require more than occasional gross manipulation with the right hand. Dkt. #7-2, p. 76.

The VE also testified that the additional jobs of usher and chaperone were available under the hypothetical, and they do not require more than occasional reaching, handling, and fingering. Dkt. #7-2, p. 76.

Next, the ALJ asked the VE to assume the previous hypothetical but add that the person could stand or walk with normal breaks for a total of two hours in an eight-hour workday; could sit with normal breaks for a total of four hours in an eight-hour

workday; and they would need unscheduled breaks two to three times a day for 30 minutes each. Dkt. #7-2, pp. 76-77. The VE testified that, under this hypothetical, there would be no jobs in the national economy that the person could perform on a full-time, competitive basis. Dkt. #7-2, p. 77.

The ALJ then asked the VE to assume the first hypothetical but add that the person would be off task for at least 20% of the workday on a consistent basis. Dkt. #7-2, p. 77. The VE responded that that would preclude full-time, competitive employment in the national economy. *Id.*

Finally, the ALJ asked the VE again to assume the first hypothetical but add that the person would be absent from work at least four times a month consistently on an unscheduled basis. *Id.* The VE again testified that there would be no work the person could perform under such conditions. *Id.*

The VE closed by testifying that, in addition to the DOT, he uses his personal knowledge and experience in determining job availability, particularly where the DOT does not address specific limitations, such as overhead reaching. Dkt. #7-2, p. 79.

By letter dated May 11, 2021, the ALJ sent the VE written interrogatories. Dkt. #7-6, pp. 103-108. The ALJ asked the VE to assume a person within the first hypothetical presented at the hearing with the additional limitation that "the person could engage in overhead reaching, pushing or pulling with the right upper extremity up to 5%

of the work day." Dkt. #7-6, pp. 111-112. The ALJ asked if, with that additional limitation, there were unskilled jobs that the person could perform. Dkt. #7-6, p. 112. The VE responded that, with this limitation, the person could perform three jobs: furniture retail consultant, dealer accounts investigator, and chaperone. Dkt. #7-6, p. 112.

On June 28, 2021, the ALJ issued an unfavorable decision. Dkt. #7-2, pp. 14-23. The Appeals Council denied plaintiff's request for review on December 15, 2021, making the ALJ's decision the final decision of the Commissioner. Dkt. #7-2, pp. 2-7. Plaintiff filed this action on February 3, 2022. Dkt. #1.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff had not engaged in substantial gainful activity since

September 28, 2017, the alleged onset date; (2) plaintiff has the severe impairments of cervical disc herniation, mild degenerative disc disease of the lumbar spine, and status post torn labrum of the right shoulder; (3) plaintiff's impairments do not meet or equal any listed impairment; (4) plaintiff retained the RFC to perform light work[2], except that she can lift or carry 10 pounds frequently and 20 pounds occasionally with the left upper extremity and up to 5 pounds occasionally with the right upper extremity, can stand and/or walk for six hours in an eight hour day, can sit for six hours in an eight hour day, is left hand dominant, can only occasionally engage in neck rotation to the right, can only occasionally engage in neck lateral flexion to the right, can perform pushing and pulling motions with the upper and lower extremities on an occasional basis within the aforementioned weight restrictions, can engage in occasional reaching[,] pushing, pulling, lifting and carrying above shoulder level with the right upper extremity, can perform occasional pushing and pulling up to 5 pounds with the right upper extremity in all other directions, can perform occasional fine manipulation/reaching/fingering/handling with the right hand, can occasionally climb (ramps/stairs), balance, stoop, kneel, crouch and crawl, and can engage in overhead reaching, pushing or pulling with the right upper extremity for up to 5% of the work day; (5) plaintiff is unable to perform any past relevant work; and (6) plaintiff is capable of working as a furniture rental consultant, dealer accounts investigator,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

and chaperone, and is not, therefore, disabled within the meaning of the SSA. Dkt. #7-2, pp. 16-23.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1)). Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2)).

Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating sources] opinion.'" *Id.* (quoting *Shawn H. v. Comm'r of Soc. Sec.*, Civil Action No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**

Plaintiff makes two challenges the ALJ's decision: (1) The full RFC was not presented to the vocational expert and the Commissioner thus did not meet her burden at step five; and (2) the RFC was not supported by substantial evidence. Dkt. #9-1, p. 13.

### **Hypotheticals Presented to the VE**

Plaintiff asserts in her opening brief that the portion of the RFC limiting her to engaging in "overhead reaching, pushing or pulling with the right upper extremity for up to 5% of the work day" was not presented in any hypothetical to the VE. Dkt. #9-1, p. 15. This is not true, and plaintiff has admitted as much in her reply brief. Dkt. #11, p. 8 ("Plaintiff concedes that the hypothetical question was presented to the vocational expert.").

To be clear, the ALJ specifically presented this portion of the RFC to the VE in the post-hearing interrogatory, the VE responded, and the ALJ then cited that response at step five of the sequential analysis. Dkt. #7-6, p. 112; Dkt. #7-2, p. 23.

Having made that concession, plaintiff shifts gear and argues that there was a conflict, unresolved by the ALJ, between the frequency of the reaching requirements in the hypothetical and the DOT requirements for two of the positions identified by the VE. Dkt. #11, pp. 8-10. This argument—raised by plaintiff for the first time in her reply brief—is a red herring.

First, the parties agree that the VE assigned an incorrect DOT code for the dealer accounts investigator position—DOT 211.462.010. That code actually correlates with the Cashier II occupation, which requires "frequent" reaching, handling, and fingering. *See Shawn W. v. Kijakazi*, 1:20-CV-1513, 2022 WL 4094939, at *20 (N.D.N.Y. Sept. 7, 2022) (noting that Cashier II job requires frequent reaching).

Instead, the dealer accounts investigator code is DOT 241.367-038, and that job requires "occasional"—that is, up to one-third of the time—reaching, handling, and fingering. *See 241.367-038 Investigator, Dealer Accounts*, 1991 WL 672258.

Plaintiff also argues that a discrepancy exists between the RFC and the furniture rental consultant position because it too requires "occasional" reaching, handling, and fingering. Dkt. #11, pp. 9.

However, the alleged discrepancies do not exist. That is, the reaching requirements for these jobs—whether frequent or occasional—do not conflict with the RFC's 5% limitation on plaintiff use of her *right arm* for overhead reaching for the simple reason that the DOT listings do not require that such reaching be performed bilaterally. *See Shawn W.*, 2022 WL 4094939, at * 20 ("Thus, the fact that the DOT requires 'frequent' reaching in the occupations cited by the VE does not create a discrepancy in her testimony and does not change plaintiff's ability to perform the jobs because there is no requirement that the frequent reaching must be bilateral, and there was no limitation on plaintiff's ability to reach with his right upper extremity.").

While plaintiff relies on *Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87 (2d Cir. 2019), such reliance "is misplaced as that case involved an RFC excluding all overhead reaching tasks with both hands." *John B. v. Comm'r of Soc. Sec.*, CASE # 19-cv-011113, 2021 WL 681283, at *4 (W.D.N.Y. Feb. 22, 2021).

Here, plaintiff's impairments are limited to her right side, and she testified that she is not limited in the use of her left arm or hand. Dkt. #7-2, p. 59. In addition, plaintiff is left-hand dominant. *Id.* There was thus no discrepancy between the RFC and the reaching requirements of the jobs identified by the VE. *John B.*, 2021 WL 681283, at *4.

The Court thus concludes that substantial evidence supports the ALJ's findings at step five. *See id.* (concluding that the ALJ "was permitted to rely on the vocational expert interrogatories for the proposed hypothetical as there was no genuine conflict and the interrogatory constituted substantial evidence.").

### The ALJ's Formulation of the RFC

#### *Positional Changes*

Plaintiff next argues that the ALJ improperly failed to include in the RFC a limitation that she would need to change positions at will, as opined by Dr. Cristina Demian-Popescu in her medical source statement. Dkt. #9-1, pp. 16-17. This argument is not well taken.

In formulating the RFC, the ALJ stated that he had carefully considered Dr. Demian-Popescu's opinion but found it only "partially persuasive" because the more extreme "exertional, postural, or manipulative limitations" described in her report were contradicted by the weight of the medical evidence—including other medical opinions—as well as plaintiff's activities of daily living. Dkt. #7-2, pp. 18-21.

Specifically, the ALJ discussed independent orthopedic examinations of plaintiff conducted by Dr. Edward Mills in December 2017 and July 2018. Dkt. #7-2, p. 20. Dr. Mills determined—notwithstanding plaintiff's self-report that she could sit for only 10 minutes before needing to change positions—that plaintiff was limited only in lifting over 25 pounds and engaging in overhead activities. *Id.* (citing Dkt. #7-7, pp. 40-48). The ALJ

found Dr. Mills' assessments persuasive because they were consistent with "the clinical, objective, and treatment evidence," as well as plaintiff's high functioning activities of daily living. Dkt. #7-2, p. 21.

The ALJ also reviewed the opinion of consultative medical examiner Dr. Harbinder Toor, who examined plaintiff on January 2, 2019. Dkt. #7-2, p. 20. Dr. Toor noted plaintiff's moderate pain and difficulties with her right shoulder and arm, but he opined that she had only a "moderate" limitation in sitting. Dkt. #7-7, pp. 155-158. The ALJ found Dr. Toor's opinion "persuasive" for the same reasons discussed as to Dr. Mills. Dkt. #7-2, p. 21.

In addition, the ALJ found persuasive the opinions of state agency consultants Dr. S. Sonthineni and Dr. R. Mohanty, who reviewed plaintiff's medical records and opined—on January 14, 2019 and April 18, 2019, respectively—that plaintiff was capable of sitting (with normal breaks) for about 6 hours in an 8-hour workday. Dkt. #7-3, pp. 8, 19.

It is well established that the opinions of such medical experts constitute substantial evidence in support of an ALJ's decision. *John B.*, 2021 WL 681283, at *6. *See also Emmanuel G. v. Comm'r of Soc. Sec.*, 1:22-cv-06497, 2024 WL 303849, at *4-5 (S.D.N.Y. Jan. 26, 2024) (ALJ reasonably relied on medical opinion evidence from consultative and agency doctors to find that plaintiff did not have the more restrictive limitations recommended by his treating physician).

Moreover, the fact that the ALJ, in considering Dr. Demian-Popescu's opinion, discussed plaintiff's "exertional" limitations generally is not grounds for remand because applicable regulations define exertional limitations to include sitting. *See* 20 C.F.R. § 404.1569a(a). Further, "an ALJ need not explain why each and every limitation in a given opinion is rejected, if the evidence of record permits the Court to glean the rationale of an ALJ's decision." *Michael J. v. Kijakazi*, 21-CV-1320DGL, 2023 WL 3541264, at *3 (W.D.N.Y. May 18, 2023) (citation and internal quotation marks omitted).

Here, the ALJ discussed the supportability and consistency of Dr. Demian-Popescu's opinion at length in light of the overall evidence of record. This is sufficient under the substantial-evidence standard of review. *Id.* at *3-4. *See also John B.*, 2021 WL 681283, at *6 (ALJ's RFC was supported by substantial evidence; although he did not adopt treating physician's opinion that plaintiff needed to change positions as needed, he "appropriately weighed the conflicting medical opinion evidence").

### *Off-Task Time and Absenteeism*

Plaintiff also argues that the ALJ failed to account for Dr. Demian-Popescu's opinion that plaintiff would likely be absent from work more than four days a month; that her pain would frequently interfere with her attention and concentration needed to perform even simple work tasks; and that she would need unscheduled breaks 2-3 times a day for 30 minutes at a time. Dkt. #9-1, pp. 18-26.

However, as the Commissioner accurately notes, plaintiff cites only a single paragraph of the ALJ's analysis for the proposition that he provided a "conclusory rationale" for not including such limitations in the RFC. Dkt. #9-1, p. 20. This is not a complete picture of the ALJ's analysis.

The ALJ devoted three pages to discussing the record evidence after acknowledging Dr. Demian-Popescu's opinion regarding plaintiff's likely absenteeism and inability to maintain attention due to chronic pain. Dkt. #7-2, pp. 18-21. He found, however, that these opined limitations were not supported by the weight of the evidence.

First, the ALJ noted that Dr. Demian-Popescu's opinion regarding off-task time was belied by plaintiff's own statement in her function report that she did not have problems paying attention and could finish what she started. Dkt. #7-2, p. 18 (citing Dkt. #7-6, p. 22).[3]

The ALJ next discussed Dr. Demian-Popescu's treatment notes and observed that they made no mention of off-task limitations or absenteeism. Dkt. #7-2, pp. 18-19. Plaintiff argues that this was improper because these limitations arose from plaintiff's chronic pain, which is documented throughout Dr. Demian-Popescu's notes, and an opined limitation is not required to be documented in treatment records. Dkt. #9-1, pp. 19-20.

---

[3] This citation in the ALJ's decision appears to contain a scrivener's error. It cites to the function report as Exhibit 14F, but it is actually Exhibit 3E.

However, the ALJ's observation that Dr. Demian-Popescu's records did not mention such limitations applied, not to her general treatment records, but to records she submitted to the New York State Workers' Compensation Board assessing the degree of plaintiff's impairment and her "work status" after the alleged onset date. Dkt. #8-1, pp. 8, 44, 87, 182, 187, 191, 397. These assessments generally stated that plaintiff was capable of sedentary work with the only restrictions being lifting for her right side and neck. *Id.*

One of these submissions was based on Dr. Demian-Popescu's examination of plaintiff on March 10, 2021, in which she described plaintiff's work status as: "Patient remains capable of sedentary activities, however not strenuous or repetitive as far as upper extremities and neck are involved." Dkt. #8-1, p. 8. This report was made just eight days after Dr. Demian-Popescu completed her medical source statement opining as to what the ALJ viewed as "drastic" off-task and absenteeism limitations. Dkt. #7-7, pp. 398-400. At a minimum, therefore, these records were relevant to the ALJ's evaluation of Dr. Demian-Popescu's opinion.

Further, contrary to plaintiff's assertion, the ALJ did not "merely state" that Dr. Demian-Popescu's opinion was not consistent with the overall medical evidence. Dkt. #9-1, p. 21. Instead, as noted above, the ALJ reviewed the other medical evidence and the opinions of both consultative and agency doctors and compared them with Dr. Demian-Popescu's opined limitations. Dkt. # 7-2, pp. 19-21. He found that this evidence contradicted Dr. Demian-Popescu's report in several respects and supported the RFC. *Id.*

Plaintiff's argument on this point thus fails because it is well established that "genuine conflicts in the medical evidence are for the Commissioner to resolve." *Timothy S. v. Comm'r of Soc. Sec.*, 22-CV-00288-MJR, 2024 WL 1904407, at *1 (W.D.N.Y. May 1, 2024) (citation and internal quotation marks omitted).

Plaintiff also faults the ALJ's observation that Dr. Toor, in his medical source statement, did not include any limitations relating to work interruptions or absenteeism. Dkt. #9-1, p. 24. Plaintiff argues that Dr. Toor was not "asked" about plaintiff's ability to remain on task or whether she could maintain a schedule, and thus the ALJ improperly relied on Dr. Toor's opinion to draw a negative inference against her. *Id.*

This argument fails, however, because even assuming that the ALJ was relying on an "omission" in Dr. Toor's report, the ALJ did not rely on it as the "primary evidence" supporting the RFC. *Rosa v. Callahan*, 168 F.3d 72, 81 (2d Cir. 1999). To the contrary, as discussed above, the ALJ found Dr. Demian-Popescu's opined off-task and absenteeism limitations unpersuasive based on plaintiff's own statements, as well as the other medical evidence of record.

Plaintiff also argues that the ALJ improperly noted that plaintiff's treatment records did not reflect a pattern of missed appointments as evidence that she was able to maintain a schedule. Dkt. #9-1, pp. 24-26. However, even if such reliance was error, it was harmless because the ALJ cited—as discussed above—other evidence that

contradicted Dr. Demian-Popescu's opined off-task and absenteeism limitations, including plaintiff's own statements. *See Lara M. v. Comm'r of Soc. Sec.*, 5:22-CV-01407 (AMN/ML), 2023 WL 10365082, at *13 (N.D.N.Y Dec. 20, 2023) (noting that ALJ erred in relying on plaintiff's history of attending medical appointments in rejecting absenteeism limitation, pursuant to *Rucker v. Kijakazi*, 48 F.4th 86, 93 (2d Cir. 2022), but holding the error was harmless because ALJ "provided a number of other valid reasons for questioning the reliability" of opinions of treating physician and social worker).

### *Opinions of Drs. Mills, Toor, Sonthineni, and Mohanty*

Plaintiff next argues that the ALJ erred in assessing the medical opinions of Drs. Mills, Toor, Sonthineni, and Mohanty. Dkt. #9-1, pp. 26-28.

As demonstrated by the Court's discussion above, the ALJ discussed each of these doctors' findings in detail and found them to be "consistent with the claimant's high functioning activities of daily living and the clinical, objective, and treatment evidence." Dkt. #7-2, p. 21. He also noted that these opinions were "mutually supportive," and that Dr. Mills' and Dr. Sonthineni's opinions were consistent with a greater RFC than that reached by the ALJ. Dkt. #7-2 pp. 20-21.

Plaintiff is also incorrect that the ALJ engaged in circular reasoning by finding only that these opinions conformed to the RFC. Dkt. #9-1, p. 26. Although the ALJ set forth his factual analysis of these medical findings separately from his assessment of their persuasiveness, a coherent reading of the decision shows that the ALJ fulfilled his

duty to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Timothy D. v. Comm'r of Soc. Sec.*, 652 F. Supp.3d 387, 393 (W.D.N.Y. 2023) (citations and internal quotation marks omitted).

### Subjective Allegations

Plaintiff's final argument is that the ALJ improperly failed to credit her subjective allegations. Dkt. #9-1, pp. 28-30.

"A claimant's subjective complaints of pain and limitation are an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Emmanuel G.*, 2024 WL 303849, at *6 (citations and internal quotation marks omitted).

"However, the ALJ is. . .not required to accept the claimant's subjective complaints without question." *Id.* "Rather, the ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id.*

Here, the ALJ followed the two-step process in evaluating plaintiff's credibility. *See id.* He first found that plaintiff suffered from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged, but he concluded that the evidentiary record as a whole was inconsistent with the degree of limitations plaintiff alleged. Dkt. #7-2, p. 18. In so doing, he considered plaintiff's activities

of daily living, her course of treatment, the medical evidence, and the medical opinions. Dkt. #7-2, p. 21. This was proper. *Emmanuel G.*, 2024 WL 303849, at \*6.

Plaintiff does not specify exactly what in her testimony the ALJ failed to credit, instead stating simply that the "ALJ rejected Plaintiff's allegations." Dkt. #9-1, p. 28. Plaintiff then states that the ALJ rejected *Dr. Demian-Popescu's* proposed limitations. *Id*. Of course, the Court has already addressed that issue.

Plaintiff also criticizes the ALJ's consideration of plaintiff's activities of daily living in assessing her limitations. Dkt. #9-1, pp. 28-29. However, "[a]lthough ALJs must be careful not to overinterpret a claimant's ability to perform limited tasks as evidence of the ability to maintain full-time competitive, remunerative work, the regulations expressly permit consideration of the claimant's 'daily activities when assessing credibility." *Emmanuel G.*, 2024 WL 303849, at \*8 (citing 20 C.F.R. § 404.1529(c)(3)(i)).

Here, the ALJ noted that plaintiff lives alone and is able to perform self-care, cook regularly, clean with assistance, do laundry, go shopping, and drive a car. Dkt. #7-2, p. 18.  The ALJ reasonably found that these activities, as well as the other record evidence, did not support plaintiff's claimed limitations. Dkt. #7-2, pp. 18, 21

The ALJ also properly considered plaintiff's course of treatment, medications, and other measures employed to attempt to relieve her pain. *Emmanuel G.*, 2024 WL 303849, at \*7 (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

The court's observations in *Emmanuel G.* thus apply here:

There is no question that Plaintiff suffered from pain and limitation. The ALJ did not dismiss Plaintiff's subjective complaints and, instead, found him limited to a reduced range of light work during the relevant time period. . . However, disability requires more than mere inability to work without pain. . . Otherwise eligibility for disability benefits would take on a new meaning. . .

Here, the ALJ offered specific support for the decision to discount Plaintiff's subjective complaints, including a reasonable reading of the treatment notes and clinical assessments, an appropriate reconciliation of the medical opinion evidence, and proper consideration of the activities of daily living. This is sufficient to sustain this aspect of the ALJ's decision under the deferential standard of review applicable here.

*Emmanuel G.*, 2024 WL 303849, at *8 (citations omitted).

The Court thus finds plaintiff's argument on this point to be without merit.

For the above reasons, the Court finds that the ALJ's decision was based on substantial evidence.

**CONCLUSION**

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #9) is denied, and the Commissioner's motion for judgment on the pleadings (Dkt. #10) is granted.

The Clerk of Court is directed to close this case.

~ 23 ~

**SO ORDERED.**

DATED:        Buffalo, New York

               June 3, 2024

                                    s/ H. Kenneth Schroeder, Jr.
                                    **H. KENNETH SCHROEDER, JR.**
                                    **United States Magistrate Judge**